## WADE v. WADE.

### No. 13,814; October 20, 1892.

#### 31 Pac. 258.

**Husband and Wife—Maintenance—Condonation.**—The act of a wife, in allowing the husband to return and cohabit with her, after she has obtained a decree for separate maintenance on the ground of desertion, amounts to condonation, although done under the impression that her refusal would furnish ground for divorce; and the maintenance, therefore, must be discontinued.[1]

APPEAL from Superior Court, City and County of San Francisco; E. R. Garber, Judge.

Application by Annie Wade against John C. Wade, her husband, for an order requiring defendant to show cause why a separate maintenance obtained by her should not be increased. Defendant asks that the maintenance be discontinued altogether, and appealed from an order refusing such discontinuance. Reversed.

W. D. Daingerfield for appellant; J. D. Sullivan for respondent.

TEMPLE, C.—The parties are husband and wife. In 1884 plaintiff brought suit under section 137 of the Civil Code to obtain a decree for a separate maintenance, charging the defendant with desertion. She obtained a decree March 5, 1885, requiring defendant to permit her to continue to occupy her then residence, which was a house belonging to defendant, and awarding her $27.50 per month for her support. A few days after the decree was entered, to wit, as early as March 20, 1885, defendant returned to plaintiff, since which time the

---

[1] Cited with approval in McIlroy v. McIlroy, 208 Mass. 464, Ann. Cas. 1912A, 936, 94 N. E. 696, where the court points out that the act of the wife in resuming cohabitation does not ipso facto release the husband from the duty to pay, but is a matter of evidence to be considered upon his making a proper application to be released.

Cited in the note in Ann. Cas. 1912A, 937, on the effect, on an order or decree for the payment of alimony or support money, of reconciliation of the parties.

parties have cohabited together as husband and wife. August 14, 1889, upon the application of plaintiff, an order was obtained from the superior court of the city and county of San Francisco, requiring defendant to show cause why the allowance should not be increased. The defendant appeared and made his showing in answer to the order, and, among his reasons why the allowance should not be increased, alleged "that ever since the month of September, 1885, said plaintiff and this defendant have lived together, occupying the same house and cohabiting together as husband and wife," and asks that the decree be vacated and set aside. It is claimed that the act alleged amounts to condonation. The parties seem agreed that, if there had been a condonation, the allowance should be discontinued. Whether the facts show a condonation is the point to be determined. It is claimed that she consented to matrimonial intercourse through a misapprehension of the law. She has a horror of divorce, and feared he would have a cause of action against her to obtain one, unless she consented. It is also claimed that, admitting that the acts of the plaintiff amount to condonation, still such condonation has been revoked, under section 121 of the Civil Code, by conjugal unkindness on the part of the defendant, which, though not amounting to a cause for divorce, is sufficiently habitual and gross to show the conditions were not accepted in good faith. Neither party seems to have had the slightest suspicion that the resumption of marital relations would have any effect upon the right of the wife to her monthly allowance, for the husband faithfully paid it month by month. If this constituted a mistake of law, it was mutual. But I think it did not amount to that. Plaintiff says she did not wish her husband to get a divorce, and consented to marital intercourse to prevent his having a good ground for a divorce. In this case she was not at all in error. It did have that effect, and it would seem from this that she at least fully understood the consequence of the act. But her willingness to restore conjugal relations resulted from the false impression that her refusal would furnish a ground for divorce. Forgiveness is an amiable trait, and it is a pity that she simulated a virtue for a personal end, but the effect must be the same. Why she did not wish her husband to get a divorce is utterly immaterial. Suppose she had condoned her husband's offense under the mistaken im-

37

pression that by so doing she could control his testamentary power over his property. It would have been a mistake, but not a mistake as to the effect of the act in restoring conjugal relations. In fact, as in this case, the mistaken policy itself would make more evident the intent to rehabilitate the marital relation. She exacted no conditions for the condonation, and, if she had, I think there was no evidence of habitual gross unkindness sufficient to show that the condonation had not been accepted in good faith. It was rude to call her a "judicial pauper," but the language imputed nothing beyond the fact that he was paying a forced allowance for her support. That he was not sociable and did not always eat with her cannot, under the circumstances, be called gross unkindness. I think the order should be reversed and the court directed to enter an order discontinuing the separate maintenance.

We concur: Foote, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the order is reversed, and the court below is directed to enter an order discontinuing the separate allowance.