[Civ. No. 291.   Fourth Appellate District.—March 5, 1930.]

MADELINE M. LANE, Petitioner, v. THE SUPERIOR COURT OF FRESNO COUNTY et al., Respondents.

B. M. Benson for Petitioner.

Glenn M. De Vore for Respondents.

MARKS, J.—On August 17, 1928, petitioner was granted an interlocutory decree of divorce from Elbert K. Lane, Jr., by the Superior Court of Fresno County. On October 18, 1929, she moved the respondent court and respondent judge thereof to enter a final decree of divorce, which motion was not granted. She thereupon instituted an original proceeding in this court to secure a peremptory writ of mandate to compel respondents to enter such final decree. On their return to the alternative writ, the respondents filed a general demurrer, thereby admitting the truth of the allegations of the petition for the purpose of this hearing, and upon these pleadings the cause was submitted for decision.

Prior to the motion to have made and entered her final decree of divorce, petitioner served on her husband a copy of her notice of motion and a copy of her supporting affidavit. He did not appear or contest the motion. The material parts of her affidavit are as follows:

"Madeline M. Lane, being first duly sworn, deposes and says: That she is the plaintiff in the above entitled action; that she has read this affidavit and knows the contents thereof and that the same is true of her own knowledge.

"1. That the interlocutory judgment was granted by this court on the 17th day of August, 1928, and entered in judgment book number 61, page 54, on the 17th day of August, 1928.

"2. That since the granting of said interlocutory decree;

"(a) Said parties have attempted a reconciliation, but same has not been successful as hereinafter set forth;

"(b) That said parties have lived and cohabited together since the entry of the said interlocutory decree but are not now living or cohabiting together as is more fully set forth hereinafter.

"(c) Both parties to said action are now living.

"(d) All the requirements therein have been fully complied with on the part of the moving party herein and she is not in default in any thereof.

"(e) No motion to set aside or annul said interlocutory judgment or suit has been brought or is pending or undetermined, and no appeal has been taken or is pending therefrom, and said judgment has become final.

"3. That after the entry of the said interlocutory decree and in the month of January, 1929, this plaintiff, at the urgent solicitation, request and entreaty of the defendant, returned to defendant and resumed marital relations with the defendant and lived and cohabited with defendant until on or about the 15th day of September, 1929.

"4. That this defendant has not treated plaintiff with marital nor conjugal kindness, but since the attempted reconciliation has treated plaintiff in a cruel, harsh, thoughtless and inconsiderate manner, specifically as follows, to-wit:

"(a) That on or about the 15th day of August, 1929, defendant told plaintiff to 'go to hell' in front of the house where plaintiff and defendant were residing at 1315 Olive Avenue, in the city of Fresno, California, and in the pres-

ence of neighbors and passers by, and without any just cause or provocation and thereby caused plaintiff great humiliation, sorrow, chagrin and mental anguish.

"(b) That on or about the 5th day of September, 1929, defendant publicly and in a loud and insolent tone of voice, reprimanded plaintiff in a certain grocery store in the city of Fresno, California, for not having money to pay for groceries and thereby caused plaintiff great humiliation, sorrow and chagrin.

"(c) That during the month of September, defendant without just or any cause and in a loud and violent manner reprimanded plaintiff for driving plaintiff and defendant's automobile too much and getting dirt upon the said car, all of which caused plaintiff much sorrow, humiliation and chagrin.

"(d) That during the month of May, 1929, while plaintiff and defendant were entertaining company in their home, defendant upbraided plaintiff in a loud and violent manner and without any just cause, addressed plaintiff in a sarcastic manner and caused plaintiff great humiliation, sorrow and chagrin.

"(e) That defendant on a certain occasion in the month of August, 1929, harshly and violently upbraided plaintiff for returning a certain bathing suit belonging to a lady friend of the plaintiff's, without the knowledge of the defendant, and defendant at said time and place told plaintiff that unless defendant knew where plaintiff was going and the purpose of her errands she could not use defendant's car, but should walk on such errands, all of which caused plaintiff keen sorrow, humiliation and chagrin.

"5. Plaintiff therefore alleges that defendant has by his acts revoked any condonation which plaintiff may have extended to defendant by reason of her return to defendant and attempted reconciliation, and plaintiff alleges that there never at any time, was any express agreement of condonation made by plaintiff to the defendant; plaintiff further alleges that defendant did not accept the conditions of condonation in good faith and has not fulfilled same, for the reason that defendant has not treated plaintiff with conjugal kindness but has continuously since said attempted reconciliation treated plaintiff in a harsh, unkind and inconsiderate manner as specifically set forth above.

"6. That defendant has on many occasions and repeatedly threatened to take the minor child of plaintiff and defendant and deprive plaintiff of its care, custody and control, and has thereby caused plaintiff great sorrow, humiliation and chagrin."

The foregoing affidavit substantially sets forth the material facts before us, and upon these facts we must determine whether or not the writ of mandate shall issue. Two questions immediately present themselves for our consideration, namely, first: Is rule twenty-six of the Rules for the Superior Courts, adopted by the Judicial Council of the State of Califorina, invested with the force and authority of a statute; and, second: Under the facts set forth in the affidavit of petitioner, does any discretion exist in the trial court to grant or refuse a final decree of divorce?

The Judicial Council of California, created under section 1a, article VI, of the Constitution of California, adopted by the people at the general election held on November 2, 1926, is given the authority in subdivision five of this amendment to "adopt or amend rules of practice and procedure for the several courts not inconsistent with laws that are now or that may hereafter be in force." The rule-making power of the Judicial Council would seem to be limited by any existing law, the Constitution reserving to the legislature and the people the primary and higher right to provide rules of procedure for our courts with the secondary right in the Judicial Council, to adopt rules only, when and where the higher authority of the legislature and the people has not been exercised. It is urged that the rule in question violates the provisions of section 132 of the Civil Code. It is admitted that if the rule is valid, and if it has the force and effect of law, the writ of mandate must be denied, as the affidavit of petitioner did not conform to the requirements of this rule. We do not desire to decide this question here, but will assume for the purposes of this case that the rule does not control and will pass to what we believe is the main issue before us.

The exact question, of whether or not the trial judge had any discretion in acting upon the motion of petitioner under the facts presented here, does not seem to have been decided in this state. The converse of the situation has, however, been decided. It has been held that where a wife has been

granted an interlocutory decree of divorce on account of the fault of her husband, and a reconciliation has been effected and cohabitation resumed for a considerable length of time, the court may exercise a discretion in granting or refusing a final decree of divorce upon the application of the husband. (*McGuinness* v. *Superior Court,* 96 Cal. 222 [40 A. L. R. 1110, 237 Pac. 42] ; *Olson* v. *Superior Court,* 175 Cal. 250 [1 A. L. R. 1589, 165 Pac. 706, 707].)

A study of the decisions in the state, upon the question of the right of the trial judge to exercise his discretion in granting or refusing a final decree of divorce, leads to the conclusion that judicial opinion, if not judicial decision, has established two very general rules into which the cases fall. Where an interlocutory decree has been granted, and upon the application for a final decree no intervening facts appear to show a change in the status or relation of the parties, the entry of a final decree becomes something in the nature of a ministerial act on the part of the court, and *mandamus* may be invoked to compel it to perform its duty; but where, after the rendition of the interlocutory decree, events occur to change the status or relation of the parties, such as condonation and a resumption of the marital relation by the parties, the entry of the final decree ceases to be a ministerial act only, and becomes a judicial act in the performance of which the trial court may use its discretion, and *mandamus* will not lie. (*McGuinness* v. *Superior Court, supra; Gloyd* v. *Superior Court,* 44 Cal. App. 39 [85 Pac. 995] ; *Olson* v. *Superior Court, supra; Dell* v. *Superior Court,* 53 Cal. App. 436 [200 Pac. 85] ; *Carp* v. *Superior Court,* 76 Cal. App. 481 [245 Pac. 459] ; *O'Connell* v. *Superior Court,* 74 Cal. App. 350 [240 Pac. 294] ; *Weeks* v. *Superior Court,* 187 Cal. 620 [205 Pac. 93] ; *Stauter* v. *Carithers,* 185 Cal. 160 [196 Pac. 37] ; *London Guarantee & Accident Co.* v. *Industrial Acc. Com.,* 181 Cal. 460 [184 Pac. 864].) With these general rules in mind we must next pass to a consideration of the facts set forth in the affidavit of petitioner to determine whether there was such a change in the relation of the parties after the rendition of the interlocutory decree as would give the trial court a right to use its discretion in passing upon the motion of petitioner to enter the final decree of divorce.

There are two major reasons why the law requires a year

to intervene between the interlocutory and the final decree of divorce. One is to permit the determination of the paternity of children and the other, not less of interest to society, is to permit, if possible, the husband and wife to compose their difficulties and become so reconciled to one another that the marital relations may be resumed and no final decree of divorce become necessary. If the marriage relation found its inception in a civil contract of the two parties in the performance, existence and termination of which they alone be concerned, our task would be a simple one. But in every such contract there is a third party vitally interested, the society in which we live, and representing it, the government which gives that society the permanence upon which its existence depends. For this reason the rules of marriage are prescribed by law, and the right of dissolution should be jealously guarded.

About five months after the entry of the interlocutory decree in the case of *Lane* v. *Lane* the parties resumed cohabitation and lived together as husband and wife for a period of about eight months, when the petitioner here, the prevailing party in the divorce action, left her husband. The exact length of time over which the resumption of the marital relation extended should in principle make no difference. If a reconciliation be effected and a condonation take place, no line should be drawn whether the period be eight months or eight years. The duration of the cohabitation should be merely a circumstance to be considered by the trial judge in weighing the rights of the parties, and a measure to be applied in determining the effect of their acts and conduct.

Petitioner earnestly contends that her affidavit showed no condonation of the former cruelty of her husband. She calls attention to section 118 of the Civil Code and its provisions, to the effect that cohabitation, passive endurance, or conjugal kindness shall not be evidence of condonation unless it is accompanied by an express agreement to condone. She asserts in her affidavit that there was no express agreement to condone.

It will be observed in paragraph 3 of petitioner's affidavit that she states that upon the urgent solicitation, request and entreaty of her husband she returned to him and resumed marital relations with him and lived and cohabited with

him for about eight months. The words in which the solicitations, requests and entreaties were couched do not appear, but that they were put in words is a necessary conclusion. "A contract is either express or implied." (Sec. 1619, Civ. Code.) "An express contract is one, the terms of which are stated in words" (sec. 1620, Civ. Code). That the husband used language that amounted to a request to petitioner to return to him cannot be doubted. That they were sufficient to effect a reconciliation is shown by the conduct of the parties. That petitioner regarded their legal effect as a condonation is apparent from her affidavit, for otherwise she would not have alleged acts of cruelty in paragraphs 4 and 6, in a very patent attempt to escape the results of her forgiveness. She further seeks to be relieved from the results of her actions by stating in paragraph 5 of her affidavit that she herself did not express in words her forgiveness and condonation. In other words, appellant's contention is, that if her husband had said, "Let us forgive and forget and go back and live together as a married couple should," and she had replied, "I forgive you, and we will forget what is passed and will start our married life over again," the condonation would have been complete; but if she said nothing, and yet returned to him as his wife, then there would have been no condonation. We do not so understand the law. To have an express contract, its terms must be expressed in words. One party may use the words and the other party may accept by words, actions or conduct. Until accepted, the words form an offer, but when accepted they form an express contract. (*Los Angeles Traction Co.* v. *Wilshire,* 135 Cal. 654 [67 Pac. 1086].)

We believe that the affidavit of petitioner indicated a condonation and a change in the relations of the parties since the rendition of the interlocutory decree of sufficient character to justify the court in using a discretion in granting or refusing a final decree of divorce. In fact it would seem to be the right of the judge presiding, if not his duty, to conduct such a hearing as would enable him to determine the rights and equities of the three parties in interest, the wife, the husband and society. The court, and not a party, should decide whether or not there was a condonation. A divorce cannot be granted on the uncorroborated testimony of a party. In the proceeding below the only evidence of-

fered in support of the acts of cruelty under which she sought to escape the effect of a seeming condonation was her unsupported, *ex parte* affidavit.

To grant the relief sought by petitioner, under circumstances which we believe show an express contract to condone, we would have to hold, in effect, that where an innocent husband or wife was granted an interlocutory decree of divorce, such party prevailing in the litigation, could, as a matter of right, secure a final decree at any time after the lapse of one year, without regard to any change in the relations of the parties. We cannot reach such a conclusion. It would strike a serious blow at the sanctity of the marriage relation and disturb the high plane of morals and ethics upon which it is supposed to rest. It would seriously affect the chance of success of a reconciliation, if one were attempted. For one spouse to know that a final and legal dissolution of the marriage relation lay within his or her grasp for the taking, would not tend to promote that feeling of forbearance, charity and forgiveness necessary to the lasting success of any marriage.

A court of equity has inherent power to do equity in its decision of a cause submitted to it, and in this case the exercise of such power is necessary in order to determine the question pending between the parties litigant in the case of *Lane* v. *Lane*. The Supreme Court has recognized this power of the court in divorce actions in many decisions. In the case of *Olson* v. *Superior Court, supra*, it was said:

"The similar law in the State of New York entitles either spouse to a final judgment after three months 'unless for sufficient cause the court in the meantime shall have otherwise ordered,' and under that statute the court refused a final decree where a reconciliation was effected such as is here shown. (*Cary* v. *Cary*, 144 App. Div. 846 [129 N. Y. Supp. 444].) But in the absence from our statute of this express language found in that of New York, the power of our courts is no different. The New York statute but expressed the power which our courts in equity inherently possess. They have under our present statute and without express authorization the power to recognize condonations and reconciliations such as are here shown and to do justice to the litigants as may be demanded by such events in their

lives as have arisen subsequent to the entry of the interlocutory decree and before the expiration of the fixed period of one year.''

Appellant complains that if this writ is denied she will be left a married woman with an interlocutory decree, reciting that she is entitled to a divorce without any way of ever obtaining one. We do not so understand her position. We do not understand that any formal order, decree or judgment has been entered, either granting or refusing a final decree, which would affect her right of appeal if a proper record could be made (Code Civ. Proc., secs. 936, 963.) If the final judgment went against her it would not affect her right to bring another action based upon the alleged acts of cruelty, all of which occurred subsequent to the trial and the rendition of the interlocutory decree of divorce as set forth in her affidavit.

The peremptory writ of mandate is denied.

Sloane, P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 31, 1930.