[Civ. No. 15262. Second Dist., Div. One. Sept. 30, 1946.]

EDNA TORRENCE CHESTER, Respondent, v. ROBERT CHESTER, Appellant.

Pacht, Pelton, Warne, Ross & Bernhard, Clore Warne, N. Joseph Ross and Bernard Reich for Appellant.

Roger Marchetti for Respondent.

WHITE, J.—On January 4, 1944, plaintiff filed an action against her husband for separate maintenance. On April 7, 1944, after hearing upon an order to show cause, the court made an order awarding custody of the minor child of the

parties to plaintiff; that defendant pay the sum of $600 per month for the support of said plaintiff and minor child, payable on the 15th day of each month, commencing April 15, 1944. Defendant was further ordered to pay the sum of $2,000 attorney's fees on account, payable in installments of $500 on the 15th day of April, May, June and July, 1944— "with the understanding this is to be a default matter. In the event of contest, plaintiff may apply for additional attorney's fees at the time of trial. . . ."

On June 9 defendant's default for failure to appear or answer was entered.

It further appears that on two occasions, June 29 and July 20, 1944, the cause was on calendar for hearing and each time was ordered "off calendar."

On April 10, 1945, upon affidavit, the court issued an order to show cause directing the defendant to appear in court on April 24, 1945, to show cause why he should not be adjudged guilty of contempt of court for wilfully disobeying the aforesaid order of April 7, 1944.

On April 23, 1945, defendant served upon plaintiff and filed a notice that on April 24 he would move the court to (1) dismiss the action instituted by plaintiff on the grounds that the parties subsequent to the commencement of said action "have reconciled, settled and abandoned the action and that the alleged misconduct set forth in the complaint has been condoned"; (2) to vacate and set aside upon the same ground the aforesaid order of April 7, 1944, awarding counsel fees, and upon the further ground that "the award of counsel fees contemplated future services which cannot be rendered in this action; and (4) to deny, dismiss and quash the aforesaid order to show cause dated April 10, 1945 on the same grounds."

Said notice of motion also contained a notice that "in the alternative" defendant would move the court:

"1. To vacate and set aside the order of April 7, 1944, and to permit the defendant to be heard on plaintiff's original motion for temporary alimony and counsel fees, on the ground that defendant's failure to contest said motion in all its aspects was due to fraud and misrepresentation on the part of plaintiff, and on the further ground that defendant had good reason to believe that the motion and action had been abandoned and settled.

"2. To enjoin plaintiff from proceeding to judgment and

to permit defendant to file an answer to the complaint herein, on the same grounds as above.

"3. To modify the order of April 7, 1944, to reflect the true ability of defendant to pay temporary alimony and counsel fees, on the ground that defendant's earnings had been misrepresented to the court, and on the further ground that since the order of April 7, 1944, there has been a change of circumstances in defendant's ability to pay temporary alimony and counsel fees."

The foregoing order to show cause *in re* contempt and defendant's aforesaid motion came on for hearing April 24, 1945, following which hearing the court made an order, but because of some confusion in the wording of said minute order and the reporter's transcript, the court on December 18, 1945, made an order amending its minute order of April 24 *nunc pro tunc* "so that said minute order shall read and be as follows:

"Orders (2) to show cause re contempt and motion of defendant to dismiss the action and to vacate and set aside certain orders and judgment are called for hearing; plaintiff present with her attorney, Roger Marchetti, and the defendant with his attorneys, Pacht, Pelton, Warne, Ross & Bernhard, by, C. Warne. Edna Torrence Chester, Robert Chester and Craig Flanagan are sworn and testify. Motions (2) to show cause re contempt are continued to June 29, 1945, at 9:30 a. m. Defendant is ordered to keep up the payments heretofore ordered and is ordered to return on June 19, 1945, at 9:30 a. m. Defendant's motion is in all respects denied."

From the order of April 24, 1945, as reflected by the foregoing *nunc pro tunc* order, defendant prosecutes this appeal.

When the cause was on calendar in this court for argument, respondent, pursuant to notice appropriately given, moved this court to dismiss the appeal on the ground that on April 24, 1945, the court made no order other than to continue all matters then before the court until June 19, 1945, and "that at no time during said hearing did defendant or his counsel make a motion to vacate any order or judgment or make any other motion."

The motion to dismiss is without merit. Whatever ambiguities or contradictions appear in the reporter's and clerk's transcripts were clarified by the *nunc pro tunc* order entered December 18, 1945, as of April 24. ■ It requires no citation of authority for the statement that a court has inherent power to correct its records at any time so that they may truthfully

reflect what proceedings actually transpired. That appellant did make his motion and that the same was considered by the court is manifest from a mere reading of the foregoing order from which this appeal was taken.

Appellant first contends that the trial court should have granted his motion to dismiss the action because a reconciliation had been effected and a condonation had taken place.

It is undoubtedly the law that in divorce cases, when a reconciliation followed by cohabitation is effected neither party is entitled as a matter of right to have a final decree of divorce entered (*Peters* v. *Peters*, 16 Cal.App.2d 383, 386 [60 P.2d 313], and cases therein cited; *Hawkins* v. *Hawkins*, 104 Cal. App. 608, 611 [286 P. 747]; *Lane* v. *Superior Court*, 104 Cal.App. 340 [285 P. 860]).

Condonation is the conditional forgiveness of a matrimonial offense constituting a clear cause of divorce (Civ. Code, § 115).

The above rule is applicable to actions brought for separate maintenance (*Wade* v. *Wade*, 3 Cal.Unrep. 576 [31 P. 258]).

The factual situation as reflected by the record in the instant case is that the parties were married October 15, 1939. There is one child, a girl aged 19 months, as the issue of said marriage. On January 4, 1944, as appellant was about to board a train at Los Angeles for Salt Lake City, Utah, to fulfill a professional engagement, he was served with a copy of the complaint and summons in the separate maintenance proceeding. According to appellant, he telephoned his wife immediately upon his arrival in Salt Lake City and "she promised she would do nothing until I had an opportunity to see her. Frankly, the promise was vague and so I retained N. Joseph Ross, Esquire, to keep matters in status quo until I could get back to Los Angeles." On January 18, 1944, appellant returned to Los Angeles where "upon my arrival my wife and I talked it out, made up and spent most of the night together. I flew back the next evening with the definite promise made by my wife that she would discontinue all proceedings." There is no conflict in the evidence of the fact that upon the completion of a professional tour appellant returned to Los Angeles in November, 1944, and resumed marital relations with respondent at the family home where he remained until February, 1945, when following "some differences" respondent ordered her husband to leave the house. With reference to their agree-

ment upon the resumption of marital relations respondent wife testified, "I said that I hoped we would not have to have a trial of this matter, to let us see what we could do at this time and we would seriously try to make a go of it, and I told him that I had made a serious and sincere effort to make my marriage a success." Asked directly by the court, "Why did you go back together again, to begin with?" respondent wife testified, "For the simple reason both of us were capable and we had a 19 month old baby and I was trying hard to make a success." With reference to their final separation in February, 1945, respondent wife testified, "I knew I couldn't make a success of it because of Mr. Chester's excessive drinking and constant running with Belita, writing letters to her, which were returned, that he wanted a divorce from me."

As much of the evidence as was received is clear and uncontradicted that from November, 1944, to February, 1945, the parties lived together as husband and wife in the same house and that during such time the wife and child were maintained and supported by the husband. Respondent wife also testified that while living at the family home in December, 1944, and January, 1945, appellant built a room onto the house at a cost of some $1,200.

Section 116 of the Civil Code sets forth three elements as necessary to condonation:

1. The knowledge on the part of the condoner of the facts constituting the cause of divorce;

2. Reconciliation and remission of the offense by the injured party;

3. Restoration of the offending party to all marital rights.

Section 118 of the same code provides that cohabitation, passive endurance, or conjugal kindness shall not be evidence of condonation unless it is accompanied by an express agreement to condone. Respondent contends that there was no express agreement to condone appellant's prior acts of cruelty but that the agreement was a conditional one, dependent upon the future conduct of the appellant. But the record before us does not reveal that respondent wife exacted any conditions for the condonation. To us it appears that appellant desired and offered to return to respondent. If accepted, this offer then formed an express contract. Acceptance may be manifested by words, acts or conduct. To us it seems manifest that respondent regarded appellant's offer as one of condonation and by her conduct as well as her testimony the

conclusion seems reasonable that respondent regarded appellant's return to her as a reconciliation, the legal effect of which amounted to a condonation. True, she did not express in words her forgiveness and condonation, but her conduct from November, 1944, to February, 1945, strongly indicates a condonation (*Lane* v. *Superior Court, supra,* pp. 346, 347).

 That the court below was strongly of the opinion that the parties had become reconciled is attested by the following which occurred during examination of respondent:

"Q: Well, without trying to go further into it, you did become reconciled, did you not?

"Mr. Marchetti (Respondent's counsel): Now, if the court please——.

"The Court: Well, they might have become reconciled, but reconciliation did not continue.

"Mr. Marchetti: That is right—and again:

"The Court: What are you going to offer?

"Mr. Warne (one of appellant's counsel): In support of my motion?

"The Court: Any evidence that tends to constitute reconciliation wouldn't make any difference here.

"Mr. Warne: I would like to discuss that matter with Your Honor.

"The Court: No, I think I know the law—unless you have something that comes down within the last two or three days. . . . The reconciliation that took place would be only for the trial court, as I see it, they only ask for the three months, according to the testimony, after they separated again.

"Mr. Warne: Again, may I say this: I think Your Honor is familiar with the laws of California, and they are specific to the effect that where there is a condonation——

"The Court: General condonation has got to be something that is actual and carried out in its entirety, not for just a part of the time.

"Mr. Warne: Well, the authorities appear to be otherwise, if I might suggest to Your Honor, and I would like to present these cases and argue the authorities on the subject.

"The Court: Well, Mr. Warne, you couldn't change the law, and it is pretty clear what happened here. I don't remember any such thing as condonation continuing after people have separated."

From the foregoing it would appear that while the court conceded that a reconciliation and condonation had taken place

that because the same did not continue longer than three months it was of no moment on a motion to dismiss. We do not so understand the law. The evidence before the court indicated a condonation and a change in the relations of the parties subsequent to the filing of the complaint of sufficient character to justify the court in granting a dismissal of the action, or at least to enter an order discontinuing the separate maintenance and counsel fees for legal services contemplated but not rendered after reconciliation. In principle, if a reconciliation be effected and a condonation take place, no line should be drawn whether the period be three months, as in this case, or three years. Such is the holding in *Lane* v. *Superior Court, supra,* p. 346, wherein it is said, "The duration of the cohabitation should be merely a circumstance to be considered by the trial Judge in weighing the rights of the parties, and a measure to be applied in determining the effect of their acts and conduct."

While condonation is always conditional on conjugal kindness and is revoked when among other things, the condonee is guilty of great conjugal unkindness showing that the conditions of condonation had not been accepted in good faith or were not fulfilled (Civ. Code, § 121), we are impressed that subsequent conduct on the part of the condonee does not affect his or her rights to a dismissal of the action in which the reconciliation was effected and the condonation took place. The reason for this rule is thus stated in *Lane* v. *Superior Court, supra,* p. 348: "For one spouse to know that a final and legal dissolution of the marriage relation lay within his or her grasp for the taking would not tend to promote that feeling of forbearance, charity and forgiveness to the lasting success of any marriage."

Respondent's position in the court below would seem to be that, having obtained an order for temporary maintenance and counsel fees, she could resume the marital relationship with her husband, accept support and maintenance independent of the court order, hold the action in abeyance and then on an allegation of conjugal unkindness months later insist upon compliance with the original order. The vice of such a position, its repugnance to public policy and the sanctity of marriage is established by the cases of *Wade* v. *Wade, supra,* and *Lane* v. *Superior Court, supra.*

Respondent's right to bring another action based upon alleged acts of cruelty which occurred subsequent to the time

when a reconciliation was effected and a condonation took place was not affected (*Lane* v. *Superior Court, supra,* p. 349). In this regard, the text statement in 17 American Jurisprudence 250, paragraph 199, reads:

"(Condonation) When Made Pending Suit.—The views of authorities as to the effect of condonation made during the pendency of the divorce suit are not consistent. Some hold that condonation made at any stage of the divorce suit precludes the petitioner from proceeding further therein, unless the condition of the condonation has been broken, in which case, however, the plaintiff must file a supplemental bill. (Citing 6 B.R.C. 639 which cites *Thelin* v. *Thelin,* 8 Ill.App. 421 (1881).) On the other hand, it has been held that where a condonation during the pendency of a suit is followed by further misconduct, the plaintiff must begin *de novo.*" (Citing 6 B.R.C. 639 which cites *Jones* v. *Jones,* 59 Or. 308, 117 P. 414 (1911).)"

Furthermore, even though it be held that reconciliation and condonation does not require a party to litigate de novo, the breach of the condition of conjugal kindness must be established by evidence in the face of a motion to dismiss. In the case at bar it is manifest that the court in denying appellant's motion to dismiss was under the mistaken belief that a sufficient answer to the motion was that the reconciliation had not continued. Once reconciliation was established, and this is not disputed by respondent, it was incumbent upon her to produce proof by competent evidence that there had been a breach of the condition upon which the reconciliation and condonation were predicated. In the instant proceeding the court did not deem it necessary to take any evidence on such an issue.

Appellant's motion raised the issue of whether a reconciliation was effected and a condonation took place. It was therefore incumbent upon the court to receive all material and relevant evidence upon that issue and therefrom determine whether a condonation took place. Should the court find that a condonation did take place, then we are persuaded that, under the authorities in this state, appellant is entitled to a dismissal of the action. The refusal of the court to find upon this issue as evidenced by the statement "any evidence that tends to constitute reconciliation wouldn't make any difference here" was erroneous.

The motion to dismiss the appeal is denied. The order of April 24, 1945, as amended *nunc pro tunc*, December 19, 1945, is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

York, P. J., and Doran, J., concurred.