Shirley HAWN, Appellant,

v.

Melvin G. HAWN, Respondent.

No. 34954.

Missouri Court of Appeals, St. Louis District, Division Two.

Jan. 3, 1974.

Motion for Rehearing or Transfer Denied Feb. 11, 1974.

Anderson, Gilbert, Wolfort, Allen & Bierman, Stuart M. Haw, Jr., St. Louis, for appellant.

Cupples, Cooper & Haller, Inc., Albert J. Haller, Gary H. Sokolik, Clayton, for respondent.

McMILLIAN, Judge.

This is an appeal by plaintiff, Shirley Hawn, from a judgment entered by the circuit court of the City of St. Louis in favor of defendant Melvin Hawn. The controversy arose out of a prior California temporary alimony decree in a separate maintenance suit which was vacated by a subsequent Missouri judgment.

Plaintiff and defendant were married in Oakland, California in November, 1966, and lived together until April, 1968, when plaintiff filed a suit for separate maintenance. The California decree awarded her temporary alimony of $325.00 per month until further order of the court. Neither party has sought to modify this decree.

Defendant, a resident of the City of St. Louis since 1968, filed for a divorce in the St. Louis Circuit Court in February, 1971. Plaintiff filed an answer and a cross-bill. This circuit court first awarded her alimony pendente lite, and thereafter on the merits granted her a divorce on her cross-bill, and alimony in gross in the amount of $5400.00.

In March 1972, plaintiff petitioned the circuit court for registration and enforcement of the California decree. She claimed that $11,375.00 of accrued instalments pursuant to the decree was due her. Defendant claimed that subsequent recon-

ciliations had terminated his obligation to pay. The case was in the Equity Division of the Circuit Court, and the court vacated the California decree and discharged defendant.

Plaintiff claims the Missouri circuit court committed error in ruling (1) that there had been an effective condonation by Shirley Hawn of Melvin Hawn's marital misconduct, and (2) that such condonation automatically terminated the California temporary alimony decree and revoked accrued installments.

The circuit court based its findings and conclusions on the repeated, albeit irregular, interaction between the parties. The record reflects numerous occasions after the temporary alimony decree in which Shirley and Melvin Hawn spent weekends and sometimes longer periods together in various places—Nevada, California and Missouri. The evidence showed that these visits were initiated by both parties at different times, one travelling to visit the other wherever that may have been; that during these visits the parties had intercourse, ate meals together, and went out socially together. The evidence, however, further showed that the parties never set up a common home for themselves; that almost inevitably arguments, particularly concerning the temporary alimony decree, would occur; that the defendant would become inebriated and violent altercations would ensue and that the defendant consorted with other women.

The issues in this case may be reduced to two simple questions. First, was there a reconciliation between plaintiff and defendant? And, second, if there was a reconciliation, did it abrogate the prior temporary alimony decree?

■ At the outset we observe that in a court-tried equity case, a reviewing court reviews it upon the law and evidence and should not set aside the judgment unless it is clearly erroneous having due regard to the opportunity of trial court to judge the credibility of witnesses. Sheffield v. Andrews, 440 S.W.2d 175 (Mo.App.1969).

The evidence shows that prior to the entry of the California separate maintenance decree and when defendant was working more than 100 miles from Oakland, California, where the parties lived, plaintiff would come to where defendant was working and stay with him at a motel during the week. If defendant did not have to work on a weekend, he would go home for the weekend with his wife.

After the separate maintenance decree, this pattern continued. On two or three occasions, while defendant was working in Nevada, plaintiff stayed with him for a week, and at various other times, she would stay just for weekends. In November 1968, defendant requested and plaintiff did leave California and come to Missouri. In January 1969, plaintiff came to St. Louis and stayed with defendant. In March 1969, defendant went to Oakland and stayed a week with plaintiff. From June 10, 1969, until the middle of July 1969, both parties lived together in defendant's apartment in St. Louis. After the middle of July 1969, they separated; however, in December 1969, plaintiff returned to St. Louis and they lived together until February 1970. During the times they lived together each performed his expected marital duties.

Plaintiff's evidence was to the effect that on each occasion when they were together defendant would get drunk and beat her until she was forced to leave.

As can be readily perceived the parties stayed together on an irregular and sporadic basis. In Peterson v. Peterson, 135 Cal.App.2d 812, 288 P.2d 171 (1955), in a similar case it was said:

" . . . 'The problem is one of whether the parties have become so reconciled as to have fully resumed relations as man and wife with intention that they be permanent, obviating the necessity or desire for termination of marriage and making its continuance a mat-

ter of social propriety and probable success.' . . ."

In the case of In re Boeson's Estate, 201 Cal. 26, 255 P. 800 (1927), the court held that the parties had not effected a reconciliation even though the husband visited the wife two or three times a week for two years and occasionally spent the night with her. Although it was admitted that the husband did not live with the wife because of the crowded condition of her house the court found that there had been no reconciliation because the parties never established a marital domicile, they did not constitute a joint economic unit and they evidenced an unstable attitude inconsistent with the resumption of marital relations.

■ Seemingly, in the case at bar, the sporadic and erratic cohabitation of the parties certainly did not amount to such a reconciliation as would allow the California court to terminate future alimony payments. See Walsh v. Walsh, 108 Cal.App. 2d 575, 239 P.2d 472 (1952). On this issue defendant cites Chester v. Chester, 76 Cal. App.2d 265, 172 P.2d 924 (1946), as controlling. In the *Chester* case the trial court awarded the wife temporary alimony, attorney fees, etc., in a separate maintenance suit. Thereafter the husband filed a motion to dismiss the wife's cause of action to modify the alimony award, alleging a reconciliation. The trial court, upon learning that the reconciliation had lasted only three months, peremptorily denied the husband's motion. Upon appeal the order of the trial court was reversed and the appellate court sent the case back for further consideration suggesting that the evidence would seem to justify the discontinuance of separate maintenance. Hence, this decision is not definitive of the issue.

Nonetheless, even if there had been a reconciliation and condonation of the husband's prior misconduct (abandonment and failure to support), in our opinion, the condonation would have been revoked by the husband's continued misconduct. The rule seems to be that condonation is a conditional matter and is revoked or forfeited and its effect extinguished by the renewed misconduct of the spouse who has supposedly been forgiven. Gregg v. Gregg, 416 S.W.2d 672 (Mo.App.1967); Spainhower v. Spainhower, 441 S.W.2d 755 (Mo.App. 1969). Similarly, by statute, Sec. 121, Cal.Civil Code (in effect until January 1, 1970) provided:

"Condonation, How Revoked. Condonation is revoked and the original cause of divorce revived:

"1. When the condonee commits acts constituting a like or other cause of divorce; or,

"2. When the condonee is guilty of great conjugal unkindness, not amounting to a cause of divorce, but sufficiently habitual and gross to show that the conditions of condonation had not been accepted in good faith, or not fulfilled."

Here, the evidence was uncontradicted that every time the parties resumed cohabitation after a short period of separation, the defendant drank, reviled, abused and assaulted the plaintiff. On one occasion while drunk he beat up plaintiff's son of another marriage, broke down a motel door, and was arrested.

The effect of a completed reconciliation and resumption of cohabitation upon a decree of separate maintenance is a matter for disagreement among courts. Some cases hold that reconciliation terminates obligations under a separate maintenance decree, so that upon a later separation the wife may not enforce the decree but must bring a new suit. Hester v. Hester, 239 N.C. 97, 79 S.E.2d 248 (1953). See also 35 A.L.R.2d 707, 743 (1954). On the other hand, other cases hold that the decree maintains its validity, and may be enforced by the wife on a subsequent separation. Justice v. Justice, 108 N.E.2d 874 (Ohio Comm.Pl.1952); Rozycki v. Rozycki, 102 N.Y.S.2d 217 (N.Y.Sup.Ct.1951); Atkinson v. Atkinson, 233 Ala. 125, 170 So. 198 (1936); Githens v. Githens, 78 Colo. 102,

239 P. 1023, 43 A.L.R. 547 (1925); Cecil v. Farmers Nat. Bank, 245 S.W.2d 430 (Ky.1951). Under this view, of course, the wife may not recover any monetary amount which may have accrued during the period in which there had been a resumption of cohabitation.

While there is much to be said for both views, we hold the resumption of cohabitation to be conditional. Or, to say the least, the brief cohabitation to be in the nature of an unsuccessful attempt by one spouse to induce the other to become reconciled and to reestablish a marital home. And if, after the resumption of cohabitation, one of the spouses continues to engage in conduct that tends to disrupt the legitimate ends of the marital relationship, then the original decree, after another separation, is reinstated.

We express no opinion as to whether, once a decree of separate maintenance has been rendered and after the passage of a reasonable time, the court may not hold as a matter of law the original decree is no longer viable. We only hold that in this case the attempted reconciliations were sporadic, irregular and so turbulent that they would not support a finding of full reconciliation and condonation. Accordingly, we hold that it is the policy of the law to encourage the reconciliation of estranged husbands and wives; therefore, an attempt by the plaintiff to achieve a reconciliation with defendant does not absolve him from any further duty to support. Indeed, it would seem clearly to be a barrier to a reconciliation if an estranged wife could endeavor to save her marriage only upon the risk of terminating her right to separate maintenance payments should her endeavor prove unsuccessful. Both common sense and law would seem to indicate that the policy of the law in favor of reconciliation would be best served by allowing an estranged wife to attempt a reconciliation without automatically vacating a court order for her support.

Accordingly, the judgment of the circuit court is reversed and remanded with instructions that the registered California judgment become a final personal judgment in favor of plaintiff and against defendant for $10,400.00 ($11,375.00 less $975.00, three months for attempted reconciliation), interest to accrue only from the date of this order.

Judgment reversed and remanded with directions.

CLEMENS, Acting P. J., and GUNN, J., concur.