[Civ. No. 7240. First Appellate District, Division One.—April 20, 1932.]

CHARLOTTE KELLER, Respondent, v. FRITZ KELLER, Appellant.

J. L. Smith for Appellant.

Ford & Johnson for Respondent.

JOHNSON, J., *pro tem.*—This is an appeal by the defendant from a final decree of divorce, granted in favor of plaintiff after a hearing at which defendant contended that the application for the final decree should be denied, on the ground that the interlocutory decree had been followed by a reconciliation between the parties and conjugal cohabitation.

The interlocutory decree of divorce on the ground of extreme cruelty was granted in favor of plaintiff after failure of defendant to plead to the complaint, and was entered on June 22, 1928. No attempt was made by defendant to vacate the interlocutory decree, but on June 19, 1929, he filed a notice that on June 21, 1929, he would apply to the court for an order denying a final decree on grounds set forth in an accompanying affidavit.

The affidavit stated in effect that from June 22, 1928, the day of the interlocutory decree, to July 3, 1928, the parties had lived together as husband and wife, and that during that period the plaintiff had declared that she was sorry she had procured the decree and desired the marital relationship to continue, and that though, to her regret, she was about to make a trip to Europe, she would look forward with pleasure to a resumption of companionship with

defendant on her return. Plaintiff further averred that though it had been agreed that the interlocutory decree should be set aside and that the parties should again live together as husband and wife, the plaintiff had since changed her mind and refused to return to the defendant.

On June 24, 1929, plaintiff made her application for a final decree; and after certain intermediate proceedings not material to this appeal, a hearing was had on July 15, 1929, at which both parties appeared with their attorneys and gave their testimony. The testimony was in some particulars sharply conflicting, and was resolved by the court in favor of plaintiff, whereupon the final decree was made and entered on July 17, 1929.

The parties had settled their property rights before the suit for divorce, and the interlocutory decree provided that beginning July 1, 1928, the defendant should pay plaintiff $100 a month for her maintenance; but with plaintiff's consent this provision was omitted from the final decree.

Inasmuch as the final decree is predicated upon the testimony of the plaintiff, her version of the occurrences after the entry of the interlocutory decree must be accepted. It had been planned that plaintiff should leave for Europe on July 3, 1928; and she testified that during the fortnight between the time of the interlocutory decree and her departure she continued to live in company with the defendant in the apartment which they had previously occupied together; and they continued to share the same bedroom, but, according to plaintiff, not the same bed. Plaintiff declared that she submitted to this arrangement on the suggestion of defendant because she had no money to go elsewhere; and moreover she had to pack her belongings which she was to take with her to Germany. Before she left, the defendant provided plaintiff with $300 for her tickets; and during her stay abroad sent her the sum of $100 on each of three occasions, but nothing more. When plaintiff left to go abroad, she and the defendant parted in a friendly way; and in a letter written to plaintiff shortly afterward defendant referred to taking leave of her at the steamer ''never to be seen again''.

The parties are of mature age, have no children, and at the hearing the plaintiff expressed her irrevocable determination not to live with defendant again because of his ill treatment of her in the past.

There was evidence on the part of the defendant that while they occupied the apartment together temporarily after the entry of the interlocutory decree, conjugal intimacies were permitted by plaintiff; but this was denied by plaintiff. Even if such were the fact, it would not be a controlling circumstance. (*Hawkins* v. *Hawkins,* 104 Cal. App. 608, 612 [286 Pac. 747].) The real question before the court was whether the circumstances as a whole showed a mutual intention to effect a reconciliation and unite in mending the break in the matrimonial yoke. This was a question of fact for the determination of the judge, who had the parties before him and patiently listened to each. The record, as we view it, indicates that he exercised his judgment fairly and discreetly.

We are mindful of the rule that a sound public policy should ever influence the courts to be alert in lending aid to the preservation rather than severance of the matrimonial tie. On the other hand, when grounds of divorce have been established by an interlocutory decree, which has been unassailed until the time has arrived for application for a final decree, the courts then have their duty to abide by their records and follow the written law, unless there is clear and cogent proof of reconciliation and resumption of connubial relations, or of some other legal ground for denying dissolution of the marriage.

Reconciliation, like condonation, is a state of mind to be determined from all the evidence including rational inferences. (*Drew* v. *Drew,* 250 Mass. 41, 45 [144 N. E. 763].)

The trial judge did not find the evidence sufficiently convincing to support a finding of reconciliation, and we must be governed by his decision upon the facts.

The judgment is affirmed.

Knight, Acting P. J., and Cashin, J., concurred.