[L. A. No. 25717. In Bank. May 13, 1960.]

THOMAS E. HULL, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; GERALINE HULL, Real Party in Interest.

*Assigned by Chairman of Judicial Council.

Edward M. Raskin and Paul P. Selvin for Petitioner.

Harold W. Kennedy, County Counsel, William E. Lamoreaux, Assistant County Counsel, and Edward A. Nugent, Deputy County Counsel, for Respondent.

Covey & Covey and Jules J. Covey for Real Party in Interest.

PETERS, J.—Geraline Hull secured an interlocutory decree of divorce from her husband, Thomas E. Hull. About 11 months later Geraline moved the trial court to bar the entry

of the final decree if her husband should seek to have such a decree entered. Shortly thereafter, and after the required one-year period had elapsed, Thomas moved for entry of the final decree. The trial court granted Geraline's motion. Thomas petitions for a writ of mandate to compel the entry of the final, contending that he is entitled to such entry as a matter of right. With this contention we agree.

The facts are as follows: On September 3, 1958, after an uncontested hearing, Geraline secured an interlocutory decree of divorce. The decree incorporated an integrated property settlement agreement previously negotiated by the parties. This agreement provided, among other things, for the conveyance of property then in escrow (subject to an exchange agreement by virtue of which Thomas was to convey certain property owned by him and receive the particular property specified in the settlement) to Geraline, alimony, child support, vacation payments for the children, and execution by Thomas of an irrevocable will creating trust funds for Geraline and the children.

On February 13, 1959, Geraline initiated a contempt proceeding against Thomas, alleging that he had failed to convey the property to her, had failed to execute his will as agreed, and had remarried in Mexico in February and was transferring valuable property to his new ''wife.'' Geraline did not appear at the hearing and no evidence was introduced. The contempt proceeding was dismissed.

In April, 1959, Geraline filed a ''Notice of Motion in re: Determination of Liability of Plaintiff and Cross-Defendant for Breach of Certain Provisions of the Interlocutory Judgment of Divorce . . .'' In May the trial court entered its determination to the effect that Thomas had not breached the agreement. This order was subsequently vacated, and the court then ruled that it lacked jurisdiction to modify the decree.

In July, 1959, Geraline commenced a civil action against Thomas and Lynn Starr (his new ''wife'') to restrain Thomas from violating the decree, to restrain Lynn Starr from receiving any property belonging to Thomas, and to require Thomas to either convey the property included in the settlement or to pay to her $150,000 in cash. (The property was valued at $144,000 by the parties.) That civil action is still pending.

In August, 1959, Geraline filed a motion to prevent the entry of the final decree. She alleged the same acts of contract

breach as in the previous proceedings. She admitted that Thomas did not actually have the real property to which she was entitled because the exchange contemplated had never been made, but alleged that this had occurred only because Thomas had refused to complete the escrow. Affidavits of her attorney and of her real estate broker was submitted to support this contention. She further alleged that certain payments for the children's vacations had not been made.

Thomas, by counteraffidavit, admitted noncompliance with the contract, but alleged: (1) That the vacation payments had not been made because the children had not taken vacations, and that he had been forced to rescue his son from juvenile court proceedings initiated by Geraline (she denied this); and, (2) that the escrow had not been completed because the other parties to it had disapproved of the covenants attached to his property, and not through any wilful action on his part. He moved for entry of the final decree.

After several hearings, the trial court granted Geraline's motion to bar entry of the final decree of divorce. It is this order which gives rise to the present petition for a writ of mandate to compel the court to enter the final decree.

If Thomas is entitled to entry of the final decree as a matter of right, then mandate is the proper remedy. (*Claudius* v. *Melvin*, 146 Cal. 257 [79 P. 897]; see also *McGuinness* v. *Superior Court*, 196 Cal. 222 [237 P. 42, 40 A.L.R. 1110]; *Olson* v. *Superior Court*, 175 Cal. 250 [165 P. 706, 1 A.L.R. 1589]; *Stewart* v. *Superior Court*, 3 Cal.App.2d 702 [40 P.2d 529]; *Isakson* v. *Superior Court*, 130 Cal.App. 180 [19 P.2d 840]; *Newell* v. *Superior Court*, 27 Cal.App. 343 [149 P. 998].) Thomas contends that since there is neither fraud nor mistake involved in the present dispute, and since he cannot be punished by contempt for breach of an integrated property agreement even though his breach is found to be wilful, the trial court has no discretion to bar entry of the final decree.

It is, of course, within the discretion of the trial court to bar entry of the final decree of divorce if the moving party is in contempt of an order or process of the court relating to the divorce action. (*Weeks* v. *Superior Court*, 187 Cal. 620 [203 P. 93]; *Pearson* v. *Superior Court*, 32 Cal.App.2d 87 [89 P.2d 162]; *Sullivan* v. *Superior Court*, 72 Cal.App. 531 [237 P. 782].) This power exists even though there has been no prior adjudication of contempt and none is sought (*Knackstedt* v. *Superior Court*, 79 Cal.App.2d 727 [180 P.2d 375]).

It is equally well settled that failure to comply with

the terms of a property settlement agreement is not punishable by contempt. (*Bradley* v. *Superior Court*, 48 Cal.2d 509 [310 P.2d 634].) This rule applies even though the payments in default were designated as child support if these support payments are part of the integrated property settlement (*Plumer* v. *Superior Court*, 50 Cal.2d 631 [328 P.2d 193]).[1] ▮ Obligations arising under such an agreement, even though the agreement is incorporated into the decree, are contractual, and contempt, of course, cannot be used to punish mere breach of contract.

In the present case the property settlement agreement is admittedly an integrated property agreement. Thus, under the rule of the cases cited above, Thomas cannot be punished by contempt even if it be assumed that the facts alleged in Geraline's affidavit are true.

▮ The trial court, in the present case, has barred the entry of the final decree for what, at most, is a mere breach of contract. To countenance such a procedure would be violative of the public policy of this state. That policy is not to discourage final and permanent severance of marriages that have failed. ▮ It has been stated that: ". . . when a marriage has failed and the family has ceased to be a unit, the purposes of family life are no longer served and divorce will be permitted. '[P]ublic policy does not discourage divorce where the relations between husband and wife are such that the legitimate objects of matrimony have been utterly destroyed.' [Citing cases.]" (*De Burgh* v. *De Burgh*, 39 Cal.2d 858, at p. 864 [250 P.2d 598].) The public interest is not enhanced by refusing people the right to legally terminate a relationship which has already been irrevocably severed in fact. The power to prevent the final dissolution of such mar-

[1]The Bradley and Plumer cases have been criticized. (See *Contempt Enforcement of "Integrated" Divorce Settlements in California*, 10 Stan.L.Rev. 321; see also 45 Cal.L.Rev. 782; 47 Cal.L.Rev. 756.)

It should also be noted that Civil Code section 139 was amended by Stats. 1959, ch. 1399, p. 3678, to read in part, as follows: "'That portion of the decree or judgment making any such allowance or allowances [alimony and child support], and the order or orders of the court to enforce the same, including any order for support of children based on a provision for such support in an integrated property settlement agreement, may be modified or revoked at any time at the discretion of the court except as to any amount that may have accrued prior to the order of modification or revocation." The amended portion of this section, which permits the court to modify or revoke child support provisions which have been made part of an integrated property settlement agreement, is not applicable to agreements concluded prior to September 18, 1959.

riages should be used only when necessary to preserve the authority of the court.

█ It is no longer a sufficient basis for denying an interlocutory decree that the petitioner is also found to be at "fault" (*De Burgh* v. *De Burgh, supra*; Civ. Code, § 132). It should be equally immaterial that the moving party has been guilty of a breach of contract not constituting a contempt, or of some improper conduct not directly related to the divorce proceeding.

In *De Burgh* v. *De Burgh, supra,* this court expressed the conviction that enforced continuation of a relationship which has been destroyed could serve no useful public policy but would, instead, serve to foster adulterous associations as well as intensify "the oppressive effect upon children and the community. . . ." (39 Cal.2d at p. 864.)

If parties are permitted to dissolve a marriage legally when the legitimate objects of that marriage have been destroyed, they will be able to build new lives and new homes which may possess the stability and happiness the previous relationship lacked. At the very least they will not be forced into improper relationships by the very law they, and their children, are admonished to respect. That this result is of greater benefit to the public welfare than enforced continuation of a status which has been totally repudiated by the parties is obvious.

█ California has specified the exclusive grounds upon which legal dissolution of the marriage can be predicated (Civ. Code, § 92). But once it has been determined that such grounds exist and an interlocutory decree of divorce has been granted the courts should not bar entry of the final decree upon the expiration of the interlocutory year except for compelling reasons.

█ A court should have the right to deny its processes and aid to one who stands in contempt or is in contempt of its orders. One who has wilfully refused to comply with the mandate of a court cannot then compel that court to do his bidding. █ But it must be remembered that even though the moving party has been adjudicated in contempt, the court is not required to bar entry of the final decree, but such action remains within the trial court's discretion. If the court determines that the public interest will be better served by finally and permanently dissolving the marital status it is entirely within its power to do so. (1 Armstrong, Family Law, 271.)

█ If one who stands in contempt of the orders of the court can still seek, and in the discretion of the court receive,

a final decree of divorce, it would seem clear that one who is not in contempt and who could not be adjudged in contempt should stand on a higher plane. If the court lacks the power to impose the punishment of contempt it certainly should not be permitted to assess what is, in actuality, a greater punishment—denial of the legal right to enter into any other relationship. To do so would be to permit the trial court to inflict the continuance of a repudiated marriage relationship upon a party because of a claimed breach of contract.

That is exactly what has happened in the instant case. The refusal to enter the final decree forces the continuation of a marriage which is no longer a going unit, and has not been such for a period of more than one year. There are no allegations of reconciliation or cohabitation. There has been neither mistake nor fraud. The parties are simply involved in a property dispute arising from a contract which they freely executed, each being represented by counsel, in an attempt to settle all property obligations resulting from their marriage. The marital relationship is severable from the property rights which it creates, and final settlement of the relationship should not be dependent upon final settlement of corollary property interests.

The concept of divisible divorce has become established in our law. Beginning with *Estin* v. *Estin*, 334 U.S. 541 [68 S.Ct. 1213, 92 L.Ed. 1561, 1 A.L.R.2d 1412], many cases have held that a divorce action which severs the personal relationship of the parties does not necessarily determine their property rights. In *Hudson* v. *Hudson*, 52 Cal.2d 735 [344 P.2d 295], this court held that an ex parte divorce which had terminated the marital status did not extinguish the wife's property right to alimony. (See also *Weber* v. *Superior Court*, 53 Cal.2d 403 [2 Cal.Rptr. 9, 348 P.2d 572].) It is true that these cases were concerned with the question of jurisdiction, but they recognize the basic proposition that severance of the personal relationship is divisible from a determination of property and support rights.

The divisible divorce is more than a jurisdictional concept. Severance of a personal relationship which the law has found to be unworkable and, as a result, injurious to the public welfare is not dependent upon final settlement of property disputes. Society will be little concerned if the parties engage in property litigation of however long duration; it will be much concerned if two people are forced to remain legally bound to one another when this status can do nothing but

engender additional bitterness and unhappiness. ■ If the parties choose to enter into a property agreement, termination of their personal status should not be conditioned upon compliance with this agreement. If they enter into an integrated property settlement which provides for support payments as well as property allocation the entire agreement is considered a property agreement (*Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873], and cases cited therein; *Finnegan* v. *Finnegan,* 42 Cal.2d 762 [269 P.2d 873]) and should be divisible *in toto* from the final dissolution of their personal status. Otherwise property disputes, real and specious, could continue for years, effectively preventing the legal establishment of any other relationship by either party. (See *Harrold* v. *Harrold,* 43 Cal.2d 77 [271 P.2d 489].)

■ Thomas and Geraline entered into a negotiated contract. If that contract has been breached, normal contract remedies are available. Indeed, Geraline has already filed a breach of contract action against Thomas. But if the trial court is permitted to bar entry of the final decree because it has determined that the contract has been breached, a very effective remedy of the court, heretofore reserved for contempt cases, will become a supplemental remedy for breach of contract. Geraline elected to settle her property rights by contract and she should now be required to look to contractual remedies, if Thomas is actually in breach.

■ Thomas contends that he has valid defenses which he has a right to litigate in the pending contract action. But the trial court, by denying his motion for final judgment, has already impliedly adjudged him in breach. Although this determination will not be binding in the contract action, nevertheless the pressure being exerted upon Thomas to comply with the terms of the contract—or reach a settlement acceptable to Geraline—whether or not he actually has a defense to the alleged breach, is obvious. It is certainly improper to permit withholding the final decree of divorce as a club to prevent normal determination of contract rights in a contract action.

Geraline also urges that Thomas is not entitled to a final decree because he committed a "fraud" upon the court. The claimed fraud is that, in the affidavit filed in support of the request for the entry of the final decree, Thomas avers that he has complied with all of the requirements of the interlocutory decree. Geraline contends that Thomas knew that he had not complied with certain provisions of the decree, and that, therefore, this affidavit was deliberately fraudulent.

It is true that a trial court has the power to bar entry of the final decree of divorce if the moving party attempts to obtain it by fraudulent means. Even a final decree can be vacated if it has been obtained by fraud. (*Miller* v. *Miller*, 26 Cal.2d 119 [156 P.2d 931].) But there is no fraud here. Thomas's alleged noncompliance is the very basis of this entire controversy. He vigorously claims and has consistently contended that he is not in default because his failure to comply with certain terms of the decree is excusable. Geraline, with equal vigor, contends that his noncompliance is not excusable. This is the very dispute that will be litigated and determined in the pending contract action. If Thomas were to be precluded from obtaining a final decree because he alleged that he is not in default, then the pending civil action, in which he will seek to prove that he is not in default, would be prejudged in advance.

Furthermore, Thomas's affidavit can hardly be said to perpetrate a fraud because his legal position was well known to all concerned, including the trial court. All of the facts involved in this property dispute were before the court when the affidavit was filed. Geraline had already filed her affidavits setting forth Thomas's claimed misdeeds, in conjunction with her motion to bar entry of the final decree. On September 25, 1959, three days before the allegedly fraudulent affidavit was filed, Thomas filed a statement in opposition to Geraline's motion in which he set forth all of the facts involved in the property dispute and explained why his failure to comply with the decree was excusable. Under these circumstances he certainly did not attempt to perpetrate a fraud upon the court by filing the affidavit.

Geraline also contends that the court should deny Thomas a final judgment of divorce because he has flouted the authority of the court by "remarrying" in Mexico during the interlocutory year and is now living in "sin" in a bigamous relationship within the state. There is no merit to this contention. Entry of the final decree is not a reward for good behavior nor is the refusal to grant it a punishment. Its purpose is to finally dissolve a relationship which has been severed in fact. It would serve no legitimate purpose to compel Thomas to continue to live in a state of bigamy as punishment for already having done so. "It is a degradation of marriage and a frustration of its purposes when the courts use it as a device for punishment." (*De Burgh* v. *De Burgh, supra,* 39 Cal.2d at p. 864.)

In *Reed* v. *Reed,* 9 Cal.App. 748 [100 P. 897], plaintiff attempted to resist defendant's motion for entry of final judgment by alleging that he had entered into "an assumed and pretended marriage relation" during the interlocutory year. The court there said: "May the plaintiff place detectives upon the trail of her husband, and watch him during the entire year to see if he is still faithful to his marriage vow for the purpose of a new cause of action? We are of opinion that such is not the interpretation to be given to the sections of the code as amended. . . . The Legislature, in the enactment of the sections, clearly did not contemplate that at the end of the year either party could file a supplemental complaint, and allege a new cause of action for divorce, or that the defeated party could, by such supplemental pleading, set forth a cause of action by way of recrimination, so as to prevent the party who prevailed at the first trial from having a decree entered after the expiration of the year. If such is the meaning of the statute a divorce case might be kept in court for years, or during the life of the parties." (*Id.* at pp. 751-753.)

In *Hirschfeld* v. *Hirschfeld,* 165 Cal.App.2d 474 [332 P.2d 397], the court refused to bar entry of the final decree on the ground that the moving party had "remarried" during the interlocutory year. The court pointed out that under the holdings of *Sullivan* v. *Sullivan,* 219 Cal. 734 [28 P.2d 914], and *Anderson* v. *Anderson,* 7 Cal.2d 265 [60 P.2d 290], defendant could have annulled his second marriage, standing on his own wrong. "[H]e could then procure his final divorce and remarry the second wife and thus validate that marriage." (*Id.* at p. 476.) Although the case is distinguishable, in that the parties did not there cohabit bigamously in California, its reasoning is equally applicable when the parties are living together within this state.

The court in the Hirschfeld case saw no reason to require a circuitous method of procuring a divorce decree. This reasoning is sound. It seems clear that a bigamous marriage consummated during the interlocutory year is not adequate justification for denying the bigamous party a final decree of divorce. (*State* ex rel. *Hansen* v. *Superior Court,* 131 Wash. 13 [228 P. 702].) The law cannot condemn an individual to eternal illicit relationships because he has once erred simply because it does not approve of the way in which the union was commenced.

Once it has been decided that the court shall not be permitted to use the continuation of the marriage status as

punishment, it would be anomalous to hold that acts which, if committed prior to the interlocutory decree, would constitute grounds for dissolving the marriage will, if committed subsequent to the interlocutory decree, prevent dissolution of the marriage. To so hold would be to return to an exaggerated form of the doctrine of recrimination expressly repudiated in *De Burgh* v. *De Burgh, supra.*

It is therefore ordered that a writ of mandate issue directing the trial court to set aside its order denying the motion for the entry of the final decree, to enter its order granting that motion, and thereupon to enter judgment in conformity with the order.

Gibson, C. J., Schauer, J., McComb, J., and Dooling, J. pro tem.,* concurred.

White, J., concurred in the judgment.

TRAYNOR, J., Concurring.—My views with respect to the enforcement of integrated bargains by contempt proceedings are set forth in dissenting opinions in *Bradley* v. *Superior Court,* 48 Cal.2d 509, 523 [310 P.2d 634], and *Plumer* v. *Superior Court,* 50 Cal.2d 631, 638 [328 P.2d 193]. Although those views remain unchanged, I am bound by those cases until they are overruled. If they necessarily controlled the result in this case, I would concur in the judgment under their compulsion. I do not believe they do, however, for in my opinion petitioner is entitled to the entry of the final decree as a matter of right even if he could be held in contempt of court for not performing the conditions of the interlocutory decree.

Early interpretations of section 132 of the Civil Code establish that a final decree of divorce may be denied only if the parties are no longer entitled to the dissolution of the marriage because of condonation (*O'Connell* v. *Superior Court,* 74 Cal. App. 350, 353 [240 P. 294]; *Lane* v. *Superior Court,* 104 Cal.App. 340, 347 [285 P. 860]) or reconciliation (*Olson* v. *Superior Court,* 175 Cal. 250, 252-253 [165 P. 706, 1 A.L.R. 1589]); if the parties were not entitled to the dissolution of the marriage in the first instance (*Carp* v. *Superior Court,* 76 Cal.App. 481, 485 [245 P. 459] [interlocutory decree obtained by mistake or fraud]; cf. *McGuinness* v. *Superior Court,* 196 Cal. 222, 229-230 [237 P. 42, 40 A.L.R. 1110]; *Miller* v. *Miller,*

---

*Assigned by Chairman of Judicial Council.

26 Cal.2d 119, 121 [156 P.2d 931] [setting aside final decree procured by fraud]) ; or, in the court's discretion, if the marriage has been dissolved by the death of one or both parties. (Civ. Code, § 132; *Gloyd* v. *Superior Court,* 44 Cal.App. 39, 43 [185 P. 995].) Section 132 also provides for delaying the entry of the final decree pending appeal from the interlocutory judgment or motion for a new trial. That section has been interpreted to achieve the strange result of postponing dissolution of the marital relationship until after an appeal from the property part of the judgment is heard and determined, although the final decree may then be entered even if the result of the appeal is to remand the cause for further proceedings. (*Harrold* v. *Harrold,* 43 Cal.2d 77, 83-86 [271 P.2d 489].) My view that section 132 refers only to appeals from that part of the interlocutory decree dissolving the marriage is set forth in the concurring opinion in the Harrold case, 43 Cal.2d at 86-90. (See also 1 Armstrong, California Family Law, 272-273.) In other cases, where the parties are entitled to a dissolution of the marriage on the merits, entry of the final decree is a ministerial act. (*Claudius* v. *Melvin,* 146 Cal. 257, 260-261 [79 P. 897] ; *Keller* v. *Keller,* 122 Cal.App. 712, 715 [10 P.2d 541] ; *Ringel* v. *Superior Court,* 54 Cal.App.2d 34, 35 [128 P.2d 558] ; see *Olson* v. *Superior Court,* 175 Cal. 250, 251-252 [165 P. 706, 1 A.L.R. 1589] ; *McGuinness* v. *Superior Court,* 196 Cal. 222, 229 [237 P. 42, 40 A.L.R. 1110] ; *Lane* v. *Superior Court,* 104 Cal.App. 340, 345 [285 P. 860] ; cf. *Angell* v. *Angell,* 84 Cal.App.2d 339, 342 [191 P.2d 54] ; *Nemer* v. *Nemer,* 117 Cal.App.2d 35, 38 [254 P.2d 661].)

Four California cases would add as another ground for denying entry of the final decree the moving party's disregard of the court's orders. (*Weeks* v. *Superior Court,* 187 Cal. 620, 622 [203 P. 93] ; *Sullivan* v. *Superior Court,* 72 Cal.App. 531, 535-536 [237 P. 782] ; *Pearson* v. *Superior Court,* 32 Cal.App. 2d 87, 89 [89 P.2d 162] ; *Knackstedt* v. *Superior Court,* 79 Cal.App.2d 727, 729 [180 P.2d 375].) The Weeks case, upon which the other three cases rest, relies upon *O'Neill* v. *Thomas Day Co.,* 152 Cal. 357, 362-363 [92 P. 856, 14 Ann.Cas. 970], a personal injury action in which plaintiff refused to answer pertinent questions under subpoena at a deposition proceeding. The court's declaration in O'Neill that ''certainly no plaintiff can, with right or reason, ask the aid and assistance of a court in hearing his demands, while he stands in an attitude of contempt to its legal orders and processes'' was not formulated with the policy considerations appropriate to a

divorce action in mind. The Weeks court undertook to incorporate the O'Neill rule into divorce law by relying upon the Olson case, *supra*, 175 Cal. 250, 252-253. The Olson case, however, was ill suited to that purpose, for it involved an unconditional reconciliation—a situation plainly distinguishable from contempt and one in which entry of the final decree is not ordinarily warranted. The Weeks case failed to notice the significant difference in terms of public policy between a final decree of divorce and other processes withheld from disobedient contestants in civil cases.

A court's power to withhold its processes, like its power to punish for contempt, rests on the necessity of upholding the court's dignity and enforcing its orders. (See *In re Shortridge,* 99 Cal. 526, 532 [34 P. 227, 37 Am.St.Rep. 78, 21 A.L.R. 755]; *Raiden* v. *Superior Court,* 34 Cal.2d 83, 86 [206 P.2d 1081].) A court exercising this power may dismiss (*Knoob* v. *Knoob,* 192 Cal. 95, 97 [218 P. 568]; *MacPherson* v. *MacPherson,* 13 Cal.2d 271, 277 [89 P.2d 382]) or stay (*Borenstein* v. *Borenstein,* 11 Cal.2d 301, 302 [78 P.2d 388]; *Krog* v. *Krog,* 32 Cal.2d 812, 818-819 [198 P.2d 510]; *Kopasz* v. *Kopasz,* 34 Cal.2d 423, 425 [210 P.2d 846]) the appeal of a recalcitrant party to the divorce action; deny a change of venue (*Ross* v. *Ross,* 48 Cal.App.2d 72, 78 [119 P.2d 444]); refuse to permit the taking of depositions (*Paddon* v. *Superior Court,* 65 Cal.App. 479, 479-480 [224 P. 474]) or the introduction of evidence (*Schubert* v. *Superior Court,* 109 Cal.App. 633, 635-636 [293 P. 814]); refuse to vacate an interlocutory (*Travis* v. *Travis,* 89 Cal.App.2d 292, 295 [200 P.2d 843]) or a final decree (*Soderberg* v. *Soderberg,* 63 Cal.App. 492, 494-495 [219 P. 82]); or deny the writs of mandate and prohibition (*Funfar* v. *Superior Court,* 107 Cal.App. 488, 490-491 [290 P. 626]). (See also the questionable exercise of this power in *Kubon* v. *Kubon,* 51 Cal.2d 229, 232 [331 P.2d 636]; dissenting opinion, 233.) When, however, there has been a final determination that the marriage should be dissolved, it is my opinion that the public interest in vindicating judicial dignity should yield to its interest in preserving the sanctity of marriage when the process sought to be withheld is a final decree of divorce, for "[i]t is a degradation of marriage and a frustration of its purposes when the courts use it as a device for punishment." (*De Burgh* v. *De Burgh,* 39 Cal.2d 858, 864 [250 P.2d 598].)

I would therefore overrule the Weeks case and disapprove the Sullivan, Pearson, and Knackstedt cases and hold that the

trial court lacks discretion to withhold entry of the final decree of divorce solely because the moving party stands in disregard of its orders.