[Civ. No. 31362. First Dist., Div. One. Sept. 20, 1972.]

In re the Marriage of DOROTHEA A. and FRANK F. STUART.
DOROTHEA A. STUART, Respondent, v.
FRANK F. STUART, Appellant.

## COUNSEL

Frank F. Stuart, in pro. per., for Appellant.

Crist, Crist, Griffiths & Bryant and Robert A. Biorn for Respondent.

## OPINION

**SIMS, Acting P. J.**—This matter is before the court on the motion of the wife, the respondent on appeal, to dismiss the husband's appeal insofar as it purports to be from that portion of the interlocutory judgment of

dissolution of marriage which declared that the parties are entitled to have their marriage dissolved and ordered that a final judgment of dissolution be entered upon proper application of either party, or on the court's own motion, after the expiration of at least six months from the date (October 21, 1970) the court acquired jurisdiction of the husband, respondent in the court below. She also requests that a remittitur issue directing the trial court to enter a final judgment of dissolution of marriage upon proper application therefor.

For the reasons set forth below it is determined that on the facts and circumstances of this case and the law as presently constituted, the motion should be granted. The appeal from that portion of the interlocutory judgment which provided for dissolution of the marriage will be dismissed and the remittitur will issue as prayed.

On September 29, 1971, an interlocutory judgment of dissolution of marriage containing the provisions referred to above (see Cal. Rules of Court, rule 1287) was made and entered. It also provided, "The court also makes the orders with respect to child custody, support and division of community property as are set forth in the Supplement to Interlocutory Judgment of Dissolution of Marriage attached thereto, the provisions of which are made a part hereof in their entirety."

The husband filed a notice of appeal which generally refers to "the judgment of the above entitled Court entered on September 29, 1971." Following unsuccessful attempts to prepare an appeal statement, the appeal proceeded on appellant's requests for reporter's and clerk's transcripts.

Appellant has filed an opening brief in which he states: "There is one principal matter at issue here. It is the custody of the minor child, . . . However, the matter of the 'dissolution of the marriage,' itself, shall be argued and reserved to the extent that it influences custody and the property rights of the parties. Custody and marriage are necessarily interrelated." The brief is directed to appellant's request that subdivision (a) of section 4600[1] of the California Family Law Act be declared unconstitutional. He concludes by noting that the primary issue is custody; and, without argument, he also requests this court to order that attorneys' fees and costs from the inception of the case (awarded to the wife below) be borne jointly and equally by the parties; that the question of spousal support (reserved in the decree below) be resolved by a final determination that the wife

---

[1]Section 4600 of the Civil Code provides in part: "Custody should be awarded in the following order of preference: (a) To either parent according to the best interests of the child, but, other things being equal, custody should be given to the mother if the child is of tender years. . . ."

is entitled to no such support; and that this court "make other awards and remedies as it deems fair and just." Nowhere is there any attack on that portion of the interlocutory decree ordering a dissolution of the marriage.

Movant asserts that the issue of dissolution of marriage (Civ. Code, div. 4, part 5, tit. 3, §§ 4501-4531) is separate and not necessarily inter-related with the issues of custody or support of the children of the marriage (*id.* tits. 4 and 5, §§ 4600-4703) or with the issue of property rights of the parties (*id.* tit. 6, §§ 4800-4813). With an exception to be reviewed below, it is generally recognized that those issues may be severally adjudi-cated. "The concept of divisible divorce is a part of the public policy of this state. [Citation.]" (*Lopez* v. *Lopez* (1965) 63 Cal.2d 735, 737 [48 Cal.Rptr. 136, 408 P.2d 744].) In *Lopez* the court held that it was not necessary to set aside the interlocutory and final decrees of divorce in order to set aside, for extrinsic fraud or mistake, a property settlement agreement which had been incorporated into the decree. In *Hull* v. *Superior Court* (1960) 54 Cal.2d 139 [5 Cal.Rptr. 1, 352 P.2d 161], the court issued a writ of mandate for a final decree of divorce over the objection that the moving husband was in default in the performance of a settlement agreement. The court observed, "The marital relationship is severable from the property rights which it creates, and final settlement of the relationship should not be dependent upon final settlement of corollary property inter-ests." (54 Cal.2d at p. 147.)

In another frame of reference, this court in *Hansen* v. *Hansen* (1965) 233 Cal.App.2d 575 [43 Cal.Rptr. 729], held that the appealing wife did not waive her right to appeal from certain portions of an interlocutory decree which denied her alimony, and which declared that certain property held in joint tenancy was not community property, by accepting the fruits of another, independent provision of the judgment. (233 Cal.App.2d at pp. 579-582.) Other examples indicate that an appeal may be taken from but a part of the judgment. (See *Harrold* v. *Harrold* (1950) 100 Cal.App.2d 601, 604 [224 P.2d 66]; *Harrold* v. *Harrold* (1954) 43 Cal.2d 77, 79 [271 P.2d 489]; *Webster* v. *Webster* (1932) 216 Cal. 485, 487 [14 P.2d 522]; *Newell* v. *Superior Court* (1915) 27 Cal.App. 343, 344 [149 P. 998]; *Cory* v. *Cory* (1945) 71 Cal.App.2d 309, 310 [162 P.2d 497] [prior appeal from order modifying custody provisions of interlocutory decree]; and 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 131, p. 4127.) It is also common practice to abandon portions of an unqualified appeal from an interlocutory judgment of divorce which provides for dissolution of the marriage, support of the wife, custody and support of children, and division of the property by failing to urge any error with respect to one or more of those issues. (See *Hansen* v. *Hansen, supra,* 233 Cal.App.2d 575, 581;

*Haldeman* v. *Haldeman* (1962) 202 Cal.App.2d 498, 501 [21 Cal.Rptr. 75]; *Haldeman* v. *Superior Court* (1962) 206 Cal.App.2d 307 [23 Cal. Rptr. 895]; *Whitney* v. *Whitney* (1958) 164 Cal.App.2d 577, 580 [330 P.2d 947]; and Witkin, *op. cit.*, Appeal, § 425, p. 4391.) Moreover, it may be noted that in many cases a judgment may be only partially reversed and be affirmed in other severable particulars. (See Witkin, *op. cit.*, Appeal, §§ 557-559, pp. 4497-4499; *DeVall* v. *DeVall* (1951) 102 Cal.App.2d 53, 54-55 [226 P.2d 605] [partial new trial granted].)

■ It is concluded that since the appellant husband could have limited his appeal to certain severable issues, leaving the remainder of the judgment in effect, the respondent wife should not be prejudiced by the overbreadth of the former's notice of appeal. If he has abandoned his attack with respect to all but the child custody provisions of the decree, she should be permitted to have his appeal dismissed to that extent, unless, as discussed below, she is precluded in any event from proceeding to finalize the dissolution.

Section 4514, which provides for a final judgment dissolving the marriage, provides in part, ". . . but if any appeal is taken from the interlocutory judgment or *a* motion for a new trial *is* made, final judgment shall not be entered until such motion or appeal has been finally disposed of, nor then, if the motion has been granted or judgment reversed. . . ." (Italics added.) Except for the emphasized words, which were added effective January 1, 1970 (Stats. 1969, ch. 1609, § 16, p. 3356), these provisions are the same as those originally enacted in former section 132 of the Civil Code in 1903. (Stats. 1903, ch. 67, § 1, p. 76.) The policy behind the adoption of the provisions contained in sections 131 and 132 of the Civil Code was analyzed in *Harrold* v. *Harrold, supra,* as follows: "The entry of an interlocutory decree prior to the entry of a final decree of divorce was first provided for in 1903 (Stats. 1903, pp. 75, 76) by adding sections 131 and 132 to the Civil Code. Two years later, in *Grannis* v. *Superior Court,* 146 Cal. 245 . . . , this court at some length assigned reasons for the addition of the new sections. (See also *Pereira* v. *Pereira,* 156 Cal. 1 . . . ; *Deyoe* v. *Superior Court,* 140 Cal. 476 . . . .) It appears from those early cases that the purpose of the 1903 legislation was based upon a policy of the state which does not favor a hasty dissolution of the bonds of matrimony, not from the standpoint of property considerations affected by the marriage, but from the standpoint of past and future personal relationships." (43 Cal.2d at p. 84.)

The interpretation to be given the provision quoted above was first considered by the courts in *Newell* v. *Superior Court, supra,* 27 Cal.App.

343, wherein the defendant husband, who had appealed from that portion of the interlocutory decree which provided for the maintenance and support of the plaintiff wife who had been found entitled to a divorce, sought a writ of mandate to compel the entry of a final decree more than two years after the entry of the interlocutory decree. In denying the writ the court stated, "It has been determined that in a divorce action under the provisions of our code the function of an interlocutory decree includes not only the establishment of the right of a party to a divorce but includes also the hearing and final determination of the rights of the parties as to property. Any disposition of property rights made in connection with the hearing of the principal cause of action is regularly included in and becomes a part of the interlocutory decree. If no appeal be taken, such decree becomes final with respect to those property rights, as well as with respect to the adjudged right to a divorce. [Citations.] Necessarily the same consequences follows where the court takes into consideration and includes in its interlocutory decree the matter of provision for the support of the wife." (27 Cal.App. at pp. 344-345.) The court concluded, "In the present case there is an interlocutory judgment which has become final with respect to the plaintiff's right to a divorce, but is subject to a pending appeal affecting the provisions made therein for the support of the plaintiff. Until the determination of that appeal the superior court is not in a position to know whether it will be required to make some other and different order affecting a matter closely connected with the granting of the divorce. . . . The provision contained in section 132 of the Civil Code, postponing the entry of final judgment until after final disposition of any appeal from the interlocutory judgment, was adopted in recognition of the fact that in granting a divorce the court has a variety of duties to perform affecting the property rights of the parties and the future welfare of those parties and their children; and it was deemed advisable that in such cases all of those matters, as far as possible, should be finally adjusted in connection with the granting of a divorce." (*Id.* at p. 345.)

The provisions of section 132 were referred to as supporting, by analogy, the refusal to interfere with the trial court's exercise of its discretion in denying a final decree pending the disposition of the wife's action seeking to set aside the interlocutory decree because of the husband's fraud. (*Carp* v. *Superior Court* (1926) 76 Cal.App. 481, 483, 485 [245 P. 459].) In *Ritter* v. *Ritter* (1930) 103 Cal.App. 583 [284 P. 950], there were appeals from both the interlocutory and final decrees on grounds including the insufficiency of the evidence to show any cause of action for divorce. The court properly concluded that since the grounds for dissolution of the marriage were contested on the appeal from the interlocutory order, the court

improperly entered the final decree. The court, however, unconditionally stated, on the basis of the two preceding decisions, ". . . it is evident that the same must be reversed, for the reason that it was made and entered prior to the disposition of the appeal from the interlocutory judgment contrary to the provision of section 132 of the Civil Code that 'if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall not be entered until such motion or appeal has been finally disposed of. . . .' [Citations.]" (103 Cal.App. at p. 586.)

In *Webster* v. *Webster, supra,* 216 Cal. 485, the wife, who was granted a divorce on the ground of extreme cruelty, appealed from that portion of the interlocutory decree which fixed and determined the property rights of the parties. The court upheld the judgment of the court below. (216 Cal. at pp. 488-493.) The opinion, continued, however, and took note that a final decree had purportedly been entered below during the pendency of the appeal; that an appeal had been taken from that "final decree" and had been dismissed as not timely; and that the wife had moved under section 473 of the Code of Civil Procedure to set aside and vacate that final decree; and that the wife had an appeal pending from the denial of her motion. It then cited and quoted from *Newell* v. *Superior Court, supra,* with approval, and concluded, "When the latter appeal comes before us for decision it necessarily follows from what has been said that the order refusing to vacate the purported 'final decree' will have to be reversed." (216 Cal. at pp. 493-495.)

In *Cory* v. *Cory, supra,* 71 Cal.App.2d 309, the court, on the basis of *Newell, Webster* and *Ritter,* reversed a final decree which was entered, not pending an appeal from the interlocutory decree or any portion thereof, but pending an appeal from an order, made almost 16 months after the interlocutory decree, which modified the provision of the interlocutory decree concerning the custody of two children. Since the court had reversed the modification of the interlocutory decree (*Cory* v. *Cory* (1945) 70 Cal. App.2d 563 [161 P.2d 385]), and the final decree apparently contained the denounced provisions, the latter decree had to be corrected. It is apparent, however, that a less drastic remedy could have been used to obtain that end. The appeal which was pending was not literally within the provisions of section 132. The principle enunciated, if carried to its illogical conclusion, would mean that there could be no dissolution of a marriage until the parties or the courts reached a final decision on the issue of custody. Since experience indicates that such a result is often unobtainable, the issue of custody, which may be continually agitated and reviewed, should be severed from the issue of dissolution of the marriage,

and the second *Cory* v. *Cory,* insofar as it tends to prohibit such severance, should be disapproved.[2]

In *DeVall* v. *DeVall, supra,* 102 Cal.App.2d 53, the court applied the provisions of section 132 to defeat the entry of a final decree of divorce for the wife, because the trial court had granted a limited new trial to the husband on the issues of property allegedly turned over to the wife during marriage, and the question of the fees awarded the wife's attorneys. The court noted that there was no appeal from the interlocutory decree, and that the issue of whether the wife had established grounds for divorce was beyond the scope of the limited order granting a new trial, and so could not be reviewed on appeal from the order made after the new trial and from the final judgment the court purported to then order. (102 Cal.App.2d at p. 57.) The court affirmed the order on the new trial, which had denied the husband any relief and had reaffirmed the provisions of the interlocutory decree, and also affirmed the order for additional attorneys' fees allowed following the limited new trial. (*Id.* at p. 53.) Nevertheless, in reliance on the provisions of section 132, and *Webster, Cory, Ritter* and *Newell,* the court reversed the final decree which the court had entered following its "judgment on the new trial." (*Id.* at pp. 55-56.) Technically that final decree could not have been entered on the issues of the property received by the wife and the newly granted attorneys' fees, because the order settling these matters had not become final, but, as pointed out by the appellate court, the question of the dissolution of the marriage had become final. It was only the overriding policy enunciated in *Newell* which voided the final divorce itself.

In *Harrold* v. *Harrold, supra,* 43 Cal.2d 77, three justices recognized that the application of the principle which was promulgated in *Newell* and approved in *Webster* to successive appeals on issues severable from the issue of the existence of grounds for divorce would permit a wife, by appealing again and again from judgments disposing of the community estate, to extend her marital status indefinitely for the purpose of sharing in the earnings of the defendant husband. (43 Cal.2d at p. 85.) They, accordingly, attempted to distinguish *Newell, Webster* and *DeVall* on the theory that in *Harrold* the interlocutory decree, insofar as it ordered the

---

[2]Movant contends that in any event the *Newell-Webster* principle should not be applied to a case where the only issue subject to appeal is custody, and she distinguishes *Newell* and *Webster* because they involved the respective open issues of alimony and property rights which were more directly related to the establishment of the grounds for divorce. This limited distinction is not pursued because it appears to this court, as set forth below in the opinion, that the restraining principle is rendered inapplicable because of the change in the theory and substance of the law as embodied in the Family Law Act. (Cf. fn. 4 below.)

dissolution of the bonds of matrimony, was affirmed by the first appeal,[3] whereas in *Newell, Webster* and *DeVall* there was no approved interlocutory decree at the time of the attempt to enter final judgment. (*Id.* at pp. 83-86.) It was concluded (*id.* at p. 85) that neither section 132 nor the cases dealing with the problem required that a new interlocutory decree be entered when the case was retried pursuant to a judgment of the appellate court which stated ". . . the interlocutory judgment is affirmed, except . . . as to that portion relating to a division of the community estate, which is remanded to the trial court with instructions to determine the division of the amount of the community estate as indicated herein, . . ." (See *Harrold* v. *Harrold, supra,* 100 Cal.App.2d at p. 609.) The contention that the portion of the judgment which granted a final decree after the limited hearing on remand was invalid was rejected. (43 Cal.2d at pp. 83-86.)

Justice, later Chief Justice, Traynor, concurring and speaking for two members of the court, urged that *Webster* and *DeVall* be overruled, because in reality they could not be distinguished from the situation which existed in *Harrold* after the original remand. (43 Cal.2d at pp. 86-88.) He stated, "In my opinion the interpretation given section 132 in the *Webster* case was erroneous. Since section 132 is concerned solely with the dissolution of the marital relationship of the parties, it should be interpreted to mean that only when an appeal is taken from the provisions of the interlocutory decree dissolving the marriage is the entry of a final decree of divorce prohibited until that appeal is finally disposed of by affirmance or by retrial, or in case of another appeal by affirmance thereof. Furthermore, the principal reason given for the holding in the *Webster* case is not persuasive. In that case it was said ' "that in granting a divorce the court has a variety of duties to perform affecting the property rights of the parties and the future welfare of those parties and their children; and it was deemed advisable [by the Legislature] that in such cases all of those matters, as far as possible, should be finally adjusted in connection with the granting of a divorce." ' [Citation.] There is no basis for this statement in either the statutes or other cases of this court. Neither alimony nor custody of children are 'finally adjusted' at the time of granting a final decree of divorce; both can be modified at any time thereafter. [Citation.] Moreover the trial court is not required to divide the community property

[3]In *Harrold* v. *Harrold* (1950) 100 Cal.App.2d 601 [224 P.2d 66], the opinion recites: "Here the appeal is only from that portion of the judgment awarding her alimony and from the portion providing for the disposition of the community property . . . from that portion of the judgment denying her the full relief demanded." (At p. 604.) The issue of the propriety of that portion of the decree dissolving the marriage was never presented to the appellate court by either party.

or decide the problem of custody at the time of the interlocutory decree, but can determine those matters in separate actions. [Citations.] Even if the Legislature deemed it advisable that property rights and custody should be finally adjusted in the divorce action, that objective is defeated by the *Webster* rule. If the parties, or the court, foresee long litigation over those matters, they may leave them to be determined later or in separate actions to avoid prolonging indefinitely the dissolution of the marriage. . . . [¶] In my opinion the obvious purpose of the appeal and new trial provision of section 132 is to prevent the dissolution of the marriage until the right thereto is finally settled. Once it is finally determined that a divorce is proper and the one year period has elapsed, the purpose of section 132 is fully accomplished." (*Id.* at pp. 88-89.)

The sixth and final justice participating also recognized the fallacy of attempting to distinguish the *Newell-Webster* interpretation of section 132, but he insisted that it should have been followed and applied to void the final decree which had been entered.

Commentators approved the concurring opinion, and suggested that *Harrold* had in effect overruled *Webster*. (See Note (1954) 42 Cal.L.Rev. 876; and Note (1955) 2 U.C.L.A. L.Rev. 271.) In fact, it has been authoritatively stated that *Harrold* stands for the following proposition, ". . . the final decree may be entered despite the pendency of this partial or limited appeal on the issues other than the right to a divorce." (3 Witkin, Summary of Cal. Law (7th ed. 1960) Husband and Wife, § 76, p. 2627; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 6 and 131, pp. 4024 and 4128; and 2 Cal. Family Lawyer (Cont. Ed. Bar 1963) § 25.59, p. 1138.) In more scholarly vein a professor of law in the field of domestic relations has listed the express overruling of *Webster* among Chief Justice Traynor's "Unfinished Business." (Armstrong, *Family Law: Order Out of Chaos* (1965) 53 Cal.L.Rev. 121, 128-129; see also Traynor, J., concurring, *Hull* v. *Superior Court, supra,* 54 Cal.2d 139, at p. 152.)

Insofar as there is a vestige of the *Newell-Webster* construction of section 132 remaining, it conflicts with the general principle enunciated by Justice Peters in *Hull* v. *Superior Court, supra,* 54 Cal.2d 139, as follows: "Severance of a personal relationship which the law has found to be unworkable and, as a result, injurious to the public welfare is not dependent upon final settlement of property disputes. Society will be little concerned if the parties engage in property litigation of however long duration; it will be much concerned if two people are forced to remain legally bound to one another when this status can do nothing but engender additional bitterness and unhappiness." (54 Cal.2d at pp. 147-148; see also Traynor, J., con-

curring, 54 Cal.2d at p. 153; Bodenheimer, *Justice Peters' Contribution to Family and Community Property Law* (1969) 57 Cal.L.Rev. 577, 602-604; Armstrong, *op. cit.,* 53 Cal.L.Rev. 121, 122-124 and 128-131.)

The adoption of the Family Law Act (Stats. 1969, ch. 1608, § 8, p. 3314, operative Jan. 1, 1970, as amended, Stats. 1970, ch. 311, p. 703, effective July 6, 1970) affords an opportunity for a reappraisal of *Webster* v. *Webster* and the completion of Chief Justice Traynor's unfinished business. The report of the Governor's Commission on the Family (1966) stated, "We recommend that the existing fault grounds of divorce and the concept of technical fault as a determinant in the division of community property, support and alimony be eliminated, . . ." (See Attorney's Guide to Family Law Act Practice (Cont. Ed. Bar, 2d ed. 1972) p. 111.) The report of 1963 Divorce Reform Legislation of the Assembly Committee on Judiciary (4 Assem. J. (1969 Reg. Sess.) p. 8054 et seq.) states in part, "First in priority . . . in any divorce reform was the elimination of the artificial fault standard. That is the premise of the Family Law Act. The intent has been to devise practicable procedures and a basis for dissolution which is descriptive of the actual reasons underlying marital breakdown. . . . [¶] The interlocutory period has been reduced from one year to six months from service or appearance of the respondent. Testimonial evidence heard on the legislative proposals generally indicated that reconciliation usually takes place well within six months, if at all, and that hope for reconciliation was the primary reason for having a waiting period at all. . . . [¶] The new act requires an equal division [of the quasi-community and community property of the parties] in all but two specific instances [which themselves are designed to produce substantial equality] without regard to the reasons for the dissolution. . . . [¶] Equality in the division of the property is most important if acrimony is to be reduced or eliminated. Much bitterness was fomented under the old law because the parties had something economic to gain by proving the other at fault, i.e., a greater share of the community property. . . ." (*Id.* at pp. 8057, 8059, 8061 and 8062. See also Comment, *The End of Innocence: Elimination of Fault in California Divorce Law* (1970) 17 U.C.L.A. L.Rev. 1306.)

The Family Law Act was enacted as part 5 of division 4 of the Civil Code. The subjects of "Marriage," "Judicial Determination of Void or Voidable Marriage," "Dissolution of Marriage," "Custody of Children," "Support of Children," "Property Rights of the Parties," and "Husband and Wife" have each been assigned a separate title under that part. (See Deerings Civ. Code, Ann., § 3509 to end (1972) pp. xxv-xxxii.) This statutory arrangement contrasts with that which was in effect at the time

of the adoption of Civil Code section 132, and which continued in effect until superseded by the Family Law Act. The former provisions governing "Marriage," "Divorce," and "Husband and Wife" were found in separate chapters under the heading "Marriage" bestowed on title 1 (now repealed) of part 3, Personal Relations, of division 1 of the Civil Code. The chapter dealing with "Divorce" was in turn broken down into articles dealing with "Nullity," "Dissolution of Marriage," "Causes for Denying Divorce" and "General Provisions." The provisions added in 1903 in sections 131 and 132, which in fact provide for the manner in which the interlocutory decree and the final decree should be entered, were paradoxically added to article 3 which dealt with "Causes for Denying Divorce." The provision governing custody and support of the children (former Civ. Code, §§ 138, 139 and 143) and for an adjudication of the property rights of the parties (*id.*, §§ 146 and 148) were found in the fourth article entitled "General Provisions."[4] (See Deering, Civ. Code Ann. (1960) §§ 1-138, pp. xxxiii-xxxviii; Deering, Civ. Code (1906) pp. 31-58; and Pomeroy, Civ. Code (1901) pp. 27-72.) The restraint on entry of a final decree found in section 132 with respect to an appeal was linked with all other provisions under the general chapter title "Divorce." The new

---

[4]Former sections 138, 139 and 143 of the Civil Code contained the permissive "may" as follows: "In actions for divorce or for separate maintenance the court *may*, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody of such minor children . . . ." (§ 138; italics added.) "In any interlocutory or final decree of divorce or in any final judgment or decree in an action for separate maintenance, the court *may* compel the party against whom the decree or judgment is granted . . . to make suitable allowance for the support, maintenance and education of the children of said marriage during their minority, . . ." (§ 139; italics added.) And "The community property, the quasi-community property and the separate property *may* be subjected to the support and education of the children in such proportions as the Court deems just." (§ 143; italics added.)

On the other hand, former section 146 appeared to mandate disposition of the community property by use of "shall," as follows: "In case of the dissolution of the marriage by decree of a court of competent jurisdiction or in the case of judgment or decree for separate maintenance of the husband or the wife without dissolution of the marriage, the court *shall* make an order for disposition of the community property and the quasi-community property and for the assignment of the homestead as follows: . . ." (§ 146; italics added.) Prior to its repeal in 1951 (Stats. 1951, ch. 1700, § 11, p. 3913), section 147 of the Civil Code read, "The court, in rendering a decree of divorce, *must* make such order for the disposition of the community property, and of the homestead, as in this chapter provided, . . ." (Code Amendments 1873-1874, ch. 612, § 34, p. 192; italics added.)

The foregoing indicates that the issue of custody could be more readily severed from the issue of dissolution than could the issue of disposition of the community property, and that, therefore, the *Newell-Webster* principle should not be extended to cases where custody alone is involved. It is unnecessary to pursue this thesis because, as pointed out in the opinion, the change of law renders that principle inapplicable in any event. (Cf. fn. 2 above.)

act places section 4514 in that title of the act which solely deals with "Dissolution of Marriage." It is significant that in 1970 (Stats. 1970, ch. 311, § 1, p. 703 effective July 6, 1970) when the procedural provisions of the Family Law Act were rearranged into one title, title 1.5, "General Provisions," section 4514 was left undisturbed with those provisions dealing solely with dissolution of the marriage.

From the foregoing it is concluded that it is no longer appropriate to say, as was said in *Newell* and confirmed in *Webster,* that "it was deemed advisable [by the Legislature] that in such cases all of those matters [the property rights of the parties and the future welfare of the parties and their children], as far as possible, should be finally adjusted in connection with the granting of a divorce." (27 Cal.App. at p. 345.) On the contrary, the arrangement of the provisions suggests that section 4514 should be given the construction urged for former section 132 by Justice Traynor when he said, "In my opinion the obvious purpose of the appeal and new trial provision of section 132 is to prevent the dissolution of the marriage until the right thereto is finally settled. Once it is finally determined that a divorce is proper and the one year [now six months from acquiring jurisdiction] period has elapsed, the purpose of section 132 is fully accomplished." (*Harrold* v. *Harrold, supra,* 43 Cal.2d at p. 89.)

The foregoing conclusion is buttressed not only by the general purpose of the Family Law Act as set forth above, but by other specific provisions of the new law. Section 4800 expressly recognizes that the court may make the division of the marital property ". . . at a later time if it expressly reserves jurisdiction to make such a property division, . . ." The provisions of section 4351 (now found in the "General Provisions," where they were transferred after original enactment in section 4502 under the heading "Dissolution of the Marriage") suggest the divisibility of the issues. They read, "In proceedings under this part, the superior court has jurisdiction to inquire into and render such judgments and make such orders as are appropriate concerning the status of the marriage, the custody and support of minor children of the marriage, the support of either party, the settlement of the property rights of the parties and the award of attorneys' fees and costs." (Civ. Code, § 4351.)

Section 4001 provides, "Notwithstanding any other provision of law, the Judicial Council may provide by rule for the practice and procedure in proceeding under this part." Pursuant to this authority the Judicial Council has prescribed certain forms. The interlocutory judgment form set forth in California Rules of Court, rule 1287, provides in part, "The court also orders that, unless both parties file their consent to a dismissal

of this proceeding, a final judgment of dissolution be entered upon proper application of either party or on the court's own motion after the expiration of at least six months from the date the court acquired jurisdiction of the respondent. The final judgment shall include such other and further relief as may be necessary to a complete disposition of this proceeding, but entry of the final judgment shall not deprive this court of its jurisdiction over any matter expressly reserved to it in this or the final judgment until a final disposition is made of each such matter." The form of request for final judgment requires the party to assert that since the granting of the interlocutory judgment of dissolution of marriage, "no appeal has been taken or is pending therefrom, and said judgment has become final." (Rule 1288.) This requirement echoes the provisions of section 4514, but it should not preclude a final decree of dissolution reserving other issues. The form of final judgment (rule 1289) expressly recognizes that some issues may be reserved because it provides, "that all of the provisions of the interlocutory judgment . . . *except as otherwise set out below,* be made binding the same as if set forth in full, and that the parties be restored to the status of unmarried persons." (Italics added.)

It is concluded, for the reasons set forth above, that the restraints on entry of a final decree of divorce by the construction of the provision of former section 132 of the Civil Code which was promulgated in *Newell* v. *Superior Court, supra,* 27 Cal.App. 343, and approved in *Webster* v. *Webster, supra,* 216 Cal. 485, and partially perpetuated in *Harrold* v. *Harrold, supra,* 43 Cal.2d 77, do not apply to the provisions of section 4514 of the Family Law Act; and that the provisions of section 4514 do not prevent the entry of a final judgment of dissolution of the marriage as provided therein when no appeal has been taken from those provisions of the interlocutory judgment which declared that the parties were entitled to have their marriage dissolved. (See § 4512.) Since appellant husband has not pursued his appeal from that portion of the interlocutory judgment which declared that the parties are entitled to have their marriage dissolved, the respondent wife's motion for a dismissal of the appeal on the issue of dissolution of the marriage should be granted,[5] and a remittitur should issue directing the trial court to proceed on that issue as provided by law and in accordance with the views set forth in this opinion.

The motion to dismiss appellant's appeal insofar as it purports to be

---

[5]Although appellant's appeal is limited to the narrow issue raised regarding the custody of his child, respondent has not moved to dismiss the appeal with respect to other issues resolved by the interlocutory judgment. It is therefore unnecessary to determine whether any or all of such issues are similarly severable and subject to piecemeal affirmance by dismissal of the appeal.

from that portion of the interlocutory judgment of dissolution of marriage which orders that an interlocutory judgment be entered declaring that the parties are entitled to have their marriage dissolved, and that a final judgment of dissolution be entered upon proper application of either party or on the court's own motion after the expiration of six months from the date the court acquired jurisdiction of the respondent (appellant herein) is granted, and a remittitur shall issue directing the trial court to proceed on that issue as provided by law and in accordance with the views set forth in this opinion.

Elkington, J., concurred.